1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   JEREMIAH BIRCHETT,                    No. C-09-00610 RMW

13                  Petitioner,            ORDER DENYING PETITION FOR WRIT
                                           OF HABEAS CORPUS
14         v.
                                           **[Re Docket No. 1]**
15   BRIAN HAWS, Warden,

16                  Respondent.

17

18         Petitioner filed a petition for a writ of habeas corpus on February 11, 2009 pursuant to 28

19   U.S.C. § 2254 challenging his conviction in state court for possession and sale of cocaine base.

20   Petitioner contends that the trial court erred by: 1) denying his motion for continuance to secure

21   representation by retained counsel, and 2) denying his motion for new trial where he alleged

22   prosecutorial misconduct and that his trial counsel acted under a conflict of interest.  This court

23   has reviewed the papers and underlying record, and for good cause shown, the petition for writ of

24   habeas corpus is denied.

25                              **I.  BACKGROUND**

26         **A.  Underlying Offenses**

27         The following facts are summarized from the California Court of Appeal's written decision

28   and the state court findings are presumed correct unless rebutted by clear and convincing evidence.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS — C-09-00610 RMW
TKN/MEC

1    28 U.S.C. § 2254(e)(1).

2         On March 1, 2005, Berkeley Police Officer Craig Lindenau responded to a police radio

3    report of illegal marijuana activity.  The officer arrived at California Street and spotted a white

4    Lexus double-parked alongside a Chevrolet Cavalier ("Chevy").  As the officer approached, he

5    smelled burnt marijuana coming from Chevy and saw a joint in the center cup holder.  Petitioner,

6    who was in the driver's seat of the Chevy, had bloodshot and watery eyes.  The officer placed

7    petitioner under arrest and searched the Chevy.  The officer found a bag of marijuana and three

8    sandwich bags containing cocaine base.

9         At a separate incident on April 13, 2005 (the "April 13 sale"), petitioner and his girlfriend,

10   Randi Harvey, were arrested in Oakland for selling cocaine base from a car to an undercover

11   officer.  Oakland Police Officer Steve Valle was dressed in plain clothes and had been waiting

12   outside Uptown Liquor Store with an individual who knew a supplier of drugs.  The individual

13   eventually waved down a Nissan Sentra driving by.  After the Sentra stopped, the officer gave $20

14   in controlled bills to a male in the passenger seat.  The driver, a female, reached over and handed

15   the officer four "rocks" of cocaine base.  Following the transaction, the male passenger gave the

16   undercover officer a note with the initials "J.B." and a phone number, and said "Call me anytime."

17   The Nissan drove away.  A few minutes later, Oakland Police Officer Kelly stopped a matching

18   vehicle driven by Harvey, with petitioner in the passenger seat.  Kelly placed petitioner under

19   arrest, searched him, and found the controlled bills Valle used to purchase the drugs.  Kelly also

20   found a cell phone on the passenger side of the vehicle and several notes with a phone number and

21   the initials "J.B."  The cell phone rang when Valle called the phone number written on the notes.

22   A female officer searched Harvey and found a plastic bag in her waistband containing cocaine

23   base.  Harvey was also arrested.

24        At trial, petitioner denied being present at the April 13 sale.  Petitioner testified that he was

25   practicing hair cutting at a barbershop that day.  According to petitioner, Harvey gave him a ride

26   from the barbershop, and they were headed to a gas station when the police pulled them over.

27        The jury found petitioner guilty on two counts of possession and one count of sale of

28   cocaine base.  Petitioner was sentenced to an aggregate 9 years and 4 months in prison.  On direct

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS — C-09-00610 RMW
TKN/MEC                                        2

appeal, the California Court of Appeal found no violations of petitioner's Sixth Amendment right

to counsel and affirmed petitioner's conviction.  The California Supreme Court denied review.

**B. Motion for Continuance**

On September 19, 2006, the day the case was sent to the trial judge for trial, petitioner

requested to continue his trial date.  In support of his request, petitioner submitted a letter from

attorney Kellin Cooper that stated:

> [Petitioner] is in the process of hiring of me to represent him for his trial.  I am
> not available to appear with [petitioner] today, as I am in a murder trial in Napa
> County.  Thank you for your consideration in this matter.  If you have any
> questions, please feel free to call me.

(R. at 1.)

The trial court interpreted the letter to mean that Cooper was not actually hired and not

immediately available to represent petitioner.  (R. at 1-2.)  The court indicated that petitioner's

charges had been pending for over a year, and that it was not willing to delay proceedings for an

undetermined length of time on the possibility of Cooper's representation. (R. at 2.)

John McDougall, petitioner's appointed public defender, conceded the motion was

untimely, but argued that petitioner's right to counsel of choice should be given great weight.  *Id.*

McDougall also suggested that the inconvenience of a continuance would not cause undue burden

because the witnesses were mostly law enforcement officers, and not civilians requiring subpoenas

to appear in court.  (R. at 3.)  The trial court responded that the request appeared to be for purposes

of delay, in hopes of receiving a better plea bargain or having the case dismissed altogether.  (R. at

3-4.)

Petitioner also complained that he was not being competently represented by McDougall.

The trial court conducted a *Marsden* hearing and determined that McDougall was providing

competent representation.  (R. at 4.)  Finding no grounds for the assertion of inadequate

representation, the trial court denied the motion for continuance and proceeded with trial.

Two days later, on September 21, 2006, petitioner made a second request for continuance.

Petitioner repeated that he felt inadequately represented by McDougall and pointed out a specific

evidentiary motion that was not filed.  The judge explained that such a motion was proper at an

earlier stage of the case, prior to McDougall's assignment to represent petitioner.  (R. at 30.)  The

judge again stated that petitioner's request was untimely and appeared to be for dilatory purposes. (R. at 30-31.)  The judge noted several earlier dates when petitioner could have raised his concerns about counsel.  (R. at 32.)

On September 25, 2006, the day of opening arguments, petitioner appeared with a different attorney, George Holland, who was willing to represent petitioner without a continuance.  After petitioner waived any errors arising from the substitution, the trial court allowed Holland to replace McDougall as petitioner's trial counsel.  (R. at 38-39.)

**C.  Motion for New Trial**

On December 27, 2006, petitioner filed a motion for new trial alleging that the prosecutor, Staci Pettigrew, improperly threatened Harvey with a prison sentence if she testified at petitioner's trial.  Petitioner claimed that the prosecutor's threat interfered with his opportunity to present witnesses in his defense, and therefore violated his right to due process.

Petitioner further alleged that Holland, after learning of the prosecutor's threat, refrained from calling Harvey as a witness out of concern for her welfare.  Petitioner contended that Holland acted under a conflict of interest, and therefore violated petitioner's right to effective assistance of counsel.

The trial court conducted extensive evidentiary hearings and found no credible evidence that Pettigrew threatened Harvey.  (R. at 829.)  Holland testified that he did not call Harvey because he felt she had credibility problems and her testimony might hurt petitioner's case. Harvey testified at the evidentiary hearing that the initials "J.B." on the note referred to her, not petitioner, and that she was sometimes called J.B., short for "Joe's bitch," because her first son's father was named Joe.  (R. at 596.)  Furthermore, Harvey denied that petitioner was in the car when she conducted the drug transaction; however, this testimony contradicted her police statement, taken the day after she was arrested, that stated "I was in the car with my boyfriend . . . we pulled off." (R. at 613.)  The trial court deemed that Harvey's testimony was overall "completely incredible" and her version of the events was "downright silly." (R. at 824.)

As to the alleged threat, Harvey testified that Pettigrew approached her in the hallway outside the courtroom during a recess in petitioner's trial.  (R. at 562-563.)  At that time, Harvey

1  was sworn in and had been advised of her rights in open court, but had not yet taken the witness

2  stand.  According to Harvey, Pettigrew said she would make sure that Harvey would go to prison

3  if Harvey testified.  Harvey was not accompanied by her personal lawyer, Jameson, but she

4  immediately relayed the threat to Holland, who was also in the hallway.  (R. at 564.)  Holland

5  replied that he was not going to put her on the stand because there was "no reason for both of you

6  to go to prison."  (R. at 565.)  Despite the purported threat and risk of prison, Harvey told Holland

7  she still wanted to testify that she alone sold drugs to the undercover officer.  (R. at 566.)

8      Holland submitted a declaration stating that he overheard Pettigrew's threat to Harvey.

9  However, at the evidentiary hearing, Holland waffled as to whether his declaration was accurate.

10  (R. 707-709.)  He testified that he was no longer sure whether Pettigrew mentioned prison during

11  admonitions in open court, or in the hallway during recess.  (R. at 723-725.)  Holland also

12  indicated that he decided not to call Harvey as a witness because her testimony raised issues of

13  bias and credibility.  (R. at 711-712.)  The trial court concluded that some parts of Holland's

14  testimony were believable, and that his declaration was essentially false.  (R. at 827-829.)

15      Pettigrew denied ever speaking to Harvey or threatening Harvey with a prison sentence.

16  Pettigrew testified that she could not recall the exact events in the hallway, but that the possibility

17  of Harvey's testimony did not give her any concern because the prosecution had a strong case.  (R.

18  at 810-811.)

19      The trial court concluded that petitioner had no factual basis for alleging a conflict of

20  interest or prosecutorial misconduct.  Accordingly, the trial court denied the motion for new trial

21  because there was no violation of petitioner's right to effective assistance of counsel or due

22  process.  The court of appeal deferred to the factual findings of the trial court and affirmed the

23  decision.

## II.  ANALYSIS

### A.  Standard for Habeas Relief

26      This petition was filed after the effective date of, and is therefore governed by, the

27  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Woodford v. Garceau*, 538 U.S.

28  202, 207 (2003).  AEDPA sets forth a highly deferential standard for evaluating state court rulings,

1   such that "federal judges must attend with utmost care to state-court decisions, including all of the

2   reasons supporting their decisions, before concluding that those proceedings were infected by

3   constitutional error sufficiently serious to warrant the issuance of the writ."   *Williams v. Taylor*,

4   529 U.S. 362, 386 (2000).

5          Under AEDPA, a federal court may grant habeas relief if the state court's ruling "resulted

6   in a decision that was contrary to, or involved an unreasonable application of, clearly established

7   Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

8   A state court's ruling is "contrary to" clearly established federal law if it applied a rule different

9   from the governing law set forth in Supreme Court cases, or if it decided a case differently than the

10  Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694

11  (2002) (citing *Williams*, 529 U.S. at 405-406).  A state court's ruling is an "unreasonable

12  application" of clearly established federal law if it identified the correct governing legal principle

13  from Supreme Court decisions, but unreasonably applied the legal principle to the facts of a

14  particular case.  *Id.*  A federal habeas court may not substitute its own independent judgment on

15  whether the state court decision applied clearly established law erroneously; rather, the application

16  must be objectively unreasonable to warrant habeas relief.  *Lockyer v. Andrade*, 538 U.S. 63, 75-

17  76 (2003).

18         Habeas relief may also be granted if the state court's ruling was "based on an unreasonable

19  determination of the facts in light of the evidence presented in the State court proceeding."  28

20  U.S.C. § 2254(d)(2).  However, state court findings of fact are presumed correct, and the petitioner

21  carries the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. §

22  2254(e)(1).

23         **B.  Counsel of Choice**

24         Petitioner claims that the denial of his request for continuance violated his right to counsel

25  of choice.  We review the court of appeal's ruling to determine whether it was "contrary to" or an

26  "unreasonable application of" clearly established federal law as set forth by the Supreme Court.

27         The right to counsel under the Sixth Amendment includes the right of a defendant to

28  choose who will represent him.  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  However,

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS — C-09-00610 RMW
TKN/MEC                                                  6

where a defendant's request to substitute counsel requires a continuance of trial proceedings, the

Supreme Court has ruled that judicial interests in the fair and efficient administration of justice

may outweigh the defendant's right to counsel of choice. *See Morris v. Slappy*, 461 U.S. 1 (1983).

In *Slappy*, the Supreme Court stated:

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted to trial courts on matters of continuances; only an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Slappy*, 461 U.S. at 11 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Here, the court of appeal correctly reviewed the trial court's ruling for abuse of discretion and found none. The outcome did not conflict with any materially indistinguishable Supreme Court case. Accordingly, the court's decision was not contrary to clearly established federal law.

Moreover, the court of appeal did not apply the abuse of discretion standard in an objectively unreasonable manner. After reviewing the record, the appellate court weighed petitioner's right to counsel against several factors disfavoring a continuance: petitioner gave no explanation as to why he waited until the day of trial to request substitution; petitioner failed to show evidence of good faith, diligent efforts to retain counsel leading up to trial; there was no clear showing that new counsel (Cooper) had been retained or when new counsel would be available; and the record did not support petitioner's assertions that McDougall was unprepared for trial. Considering that petitioner's charges had been pending for over a year and a half, and that Cooper was not available to stand in and may not have even been hired, the state trial and appellate court was not unreasonable in concluding that petitioner's circumstances did not justify his last-minute request to delay trial.

Additionally, the court of appeal properly distinguished *United States v. D'Amore*, 56 F. 3d 1202 (1995), *overruled by United States v. Garrett,* 179 F.3d 1143 (9th Cir. 1999). Petitioner relies heavily on *D'Amore*. A circuit court decision may be persuasive authority for purposes of determining whether the state court's decision was an unreasonable application of Supreme Court precedent, but the statutory language of AEDPA makes clear that the source of clearly established

law on which habeas relief may be granted must be set forth by the Supreme Court.  *Williams*, 529

U.S. at 412.  Accordingly, *D'Amore* is not binding but rather serves as a guideline to determine

whether the trial court abused its discretion.  In *D'Amore*, the defendant was denied a continuance

after requesting to substitute counsel on the eve of his probation hearing.  The Ninth Circuit held

on direct appeal that the district court abused its discretion because it failed to conduct an adequate

inquiry, and thereby failed to recognize that a high degree of conflict between defendant and

counsel outweighed the inconvenience caused by the defendant's late request.  *D'Amore* was

overruled by *Garrett* to the extent that *D'Amore* required a trial court to find a compelling reason

before granting or denying a continuance. *See Garrett*, 179 F.3d at 1145.

In any event, the circumstances here are unlike those in *D'Amore*.  Here, the trial court's

inquiry was more than adequate: the record shows that a *Marsden* hearing was held, and the trial

judge engaged in extended discussions after each request for continuance such that petitioner and

McDougall had ample opportunity to present arguments.  The court of appeal was reasonable in

finding that the trial court established a sufficient basis to make an informed decision and did not

have a duty to initiate further inquiry.

Furthermore, whereas the conflict in *D'Amore* involved a total lack of communication

between the defendant and counsel, here petitioner failed to show a serious conflict with

McDougall.  The *Marsden* hearing revealed that McDougall was competent, and as the judge

explained, petitioner's reasons for dissatisfaction did not constitute ineffective representation.  The

record also does not show that McDougall made any statements indicating that he felt unprepared

for trial.  Accordingly, this court agrees that *D'Amore* is distinguishable from the case at hand.

Petitioner also argues that the trial court relied on an erroneous assumption that Cooper

was not yet hired.  Petitioner suggests that one can draw a reasonable inference from Cooper's

letter that Cooper planned to represent petitioner immediately after his trial in Napa.  However,

while petitioner's interpretation of the letter may be reasonable, it does not follow that the trial

court's interpretation was unreasonable.  The plain language of the letter did not affirmatively state

that Cooper had been hired, nor did it specify a date when Cooper would be available.  As such,

the trial court had sufficient grounds to conclude that Cooper was not yet hired and might not

1    represent petitioner after all.

2          Petitioner finally contends that the trial court erred because it failed to consider his signed

3    declaration stating that he paid Cooper a retainer to represent him at trial.  This argument lacks

4    merit because the trial court did not have petitioner's declaration when it decided the motion for

5    continuance.  Petitioner only submitted his declaration later during the motion for new trial.

6    Petitioner has not shown by clear and convincing evidence that the trial court should have known

7    Cooper was hired at the time it decided the motion for continuance.  The state court of appeal

8    properly concluded that the trial court's denial of continuance was reasonable based on the record

9    it had at the time.

10          Granting a continuance to retain counsel of choice depends on the reasons for substitution

11   and their strength.  Here, even if the trial court had conducted further inquiry into the continuance

12   and determined that Cooper was in fact retained, petitioner nevertheless failed to show a serious

13   conflict with McDougall and made an untimely request for substitution on the first day of trial.

14   The trial judge justifiably viewed petitioner's request to be for purposes of delay. Further, the trial

15   judge actually accommodated petitioner's choice of counsel, to the extent no continuance was

16   necessary, by allowing new counsel (Holland) to step in at the beginning of trial.  Under these

17   circumstances, the California Court of Appeal was not objectively unreasonable in finding that the

18   trial court acted within its broad discretion in denying the continuance.

19               **C.  Effective Assistance of Counsel**

20          Petitioner claims the trial court violated his right to effective assistance of counsel when it

21   denied his motion for new trial.  Petitioner alleges the prosecutor improperly threatened Harvey

22   with a prison sentence if Harvey testified.  Petitioner alleges that Holland, after learning of the

23   prosecutor's threat, acted under a conflict of interest because he refrained from calling Harvey as a

24   witness out of concern for Harvey's welfare.

25          The Sixth Amendment right to counsel embodies the notion that counsel plays a crucial

26   role in the ability of the adversarial system to produce just results.  *Strickland v. Washington*, 466

27   U.S. 668, 685.  The right to counsel is not satisfied by merely having counsel present at trial;

28   rather, counsel's performance must also be sufficient to ensure the trial is fair.  *Id.*

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS — C-09-00610 RMW
TKN/MEC                                           9

1    Generally, to prevail on an ineffective assistance of counsel claim, the defendant must

2    show that counsel's performance was deficient and that the deficient performance prejudiced the

3    defense. *Strickland*, 466 U.S. at 687.  However, in cases alleging a conflict of interest, the

4    defendant may prevail if he can show that an actual conflict adversely affected counsel's

5    performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  In such cases, simply pointing to the

6    possibility of a conflict is not sufficient to impugn a criminal conviction; the defendant must

7    demonstrate that counsel actively represented conflicting interests. *Id.* at 350.  Where the

8    defendant makes the required showing of an actual conflict and its adverse effect on counsel's

9    performance, the Supreme Court has ruled that the defendant is entitled to a presumption of

10   prejudice. *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978).

11   In this case, the court of appeal and trial court concluded that petitioner failed to show an

12   actual conflict of interest.  After considering written declarations and testimony from the

13   evidentiary hearing, both courts found no credible evidence that Pettigrew threatened Harvey.

14   This court must defer to factual findings by the state courts unless rebutted by clear and

15   convincing evidence.  28 U.S.C. § 2254(e)(1).  Factual findings are particularly insulated where

16   they involve the credibility of witnesses. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

17   Here, the evidence to support a threat is contained in testimony from Harvey and Holland and a

18   written declaration from Holland.  The trial court determined, however, that Harvey's testimony

19   was implausible and that Holland's testimony was equivocal and evasive.  Furthermore, it

20   determined that Holland's declaration indicating that he overheard the threat was false.  The trial

21   court's conclusion that petitioner did not show an actual conflict of interest was not unreasonable,

22   particularly when appropriate deference is given to the trial judge's credibility findings.

23   Moreover, as the court of appeal found, Holland's decision not to call Harvey must be

24   deemed a strategic decision.  Holland testified that he did not call Harvey because she was

25   petitioner's girlfriend, and her testimony raised issues of bias and credibility that he believed

26   would harm petitioner's case.  Policy reasons weigh strongly in favor of giving counsel the benefit

27   of the doubt that significant decisions were made with reasonable professional judgment.

28   *Strickland*, 466 U.S. at 689.  Not only is it difficult to evaluate counsel's performance in hindsight,

1   but such a presumption deters a proliferation of unwarranted secondary challenges over the issue

2   of counsel's performance that would otherwise consume judicial resources and deter counsel's

3   willingness to serve. *Id.* Holland provided a tenable explanation as to why he refrained from

4   calling Harvey, and without substantial evidence to the contrary, the court assumes counsel acted

5   with professional judgment.

6       Petitioner finally argues the trial court required him to show that Harvey's testimony would

7   have resulted in a jury acquittal, whereas he needed to show only that the loss of Harvey's

8   testimony had an adverse effect on the defense case. There is no need to reach this argument

9   because petitioner has failed to meet the threshold issue of showing that an actual conflict of

10  interest existed. The trial court evaluated Harvey's credibility to determine whether Pettigrew

11  made the alleged threat, not to determine the effect of Harvey's testimony on the defense case as

12  petitioner suggests.

13      Petitioner has not presented clear and convincing evidence of a threat, and accordingly, has

14  not demonstrated an actual conflict of interest. Therefore, petitioner did not establish the factual

15  underpinnings of an ineffective assistance claim.

16  **D. Due Process**

17      Petitioner also alleges that Pettigrew's threat violated his right to due process. As discussed

18  above, petitioner failed to present clear and convincing evidence that a threat actually occurred,

19  and likewise, has not established the necessary showing for a claim of prosecutorial misconduct.

20                          **III. ORDER**

21      For the foregoing reasons, the petition for writ of habeas corpus is denied.

22                  **IV. CERTIFICATE OF APPEALABILITY**

23      The federal rules governing habeas cases brought by state prisoners require a district court

24  that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.

25  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009).

26  For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason

27  would find it debatable whether the petition states a valid claim of the denial of a constitutional

28  right [or] that jurists of reason would find it debatable whether the district court was correct in its

1    procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is

2    DENIED.

3

4

5    DATED:       April 12, 2012                    *Ronald M. Whyte*

6                                                    RONALD M. WHYTE
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28